IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLAY CALDWELL, | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | Civil Action No. 07-727 |
| | ) | Judge Terrence F. McVerry/ |
| JEFFREY A. BEARD, Secretary of | ) | Magistrate Judge Amy Reynolds Hay |
| Corrections; LOUIS FOLINO, | ) | |
| Superintendent, SCI Greene; WALLACE | ) | |
| DITTSWORTH, Food Service Manager, | ) | |
| SCI Greene; MARK DICARLO, Asst. Food | ) | |
| Service Manager, SCI Greene; LINDA | ) | |
| VARNER, RH, IT Medical Director, SCI | ) | |
| Greene, | ) | |
| Defendants | ) | Re: Dkt. [52] |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that the Defendants' Motion to Dismiss be granted and that the complaint be dismissed for failure to state a claim upon which relief can be granted.

REPORT

Clay Caldwell ("Plaintiff"), a prisoner serving a life sentence, was scalded by water while working in the prison kitchen at SCI-Greene, which required him to seek treatment at the infirmary. He claims that the water temperature was increased on the day of the incident in preparation for an inspection of the prison kitchen. He claims that the scalding violated his Eighth Amendment rights to be free of cruel and unusual punishment.

In addition, Plaintiff filed a grievance concerning the incident and the officer responsible for responding to grievance, in order to respond, consulted Plaintiff's medical records. Plaintiff

contends that the non-medical official, who obtained Plaintiff's medical records for the day of the incident, violated his Fourteenth Amendment rights to privacy in his medical records.

Because the scalding incident amounts at most to negligence and negligence is below a constitutional threshold, Plaintiff's Eighth Amendment claims should be dismissed for failure to state a claim.

In addition, because Plaintiff filed a grievance requiring medical information in order to be properly responded to, Plaintiff essentially waived the right to privacy in such information as was required in order to respond to the grievance and, hence, no Fourteenth Amendment claim can be sustained.

***Relevant Procedural and Factual History***

Plaintiff, proceeding pro se, and in forma pauperis, Dkt. [12], filed a pre printed prisoner civil rights complaint, Dkt. [13] wherein he named five defendants. They are: Jeffrey Beard, Department of Corrections ("DOC") Secretary; Louis Folino, Superintendent of SCI-Greene; Wallace Dittsworth, the Food Service Manager at SCI-Greene; Mark DiCarlo, the Assistant Food Manager at SCI-Greene, and Linda Varner, the Medical Director at SCI-Greene. Attached to the complaint were various evidentiary materials including copies of a grievance and grievance appeals relating to the scalding incident. In response to the question as to which federal laws he claimed were violated, Plaintiff wrote : "1st, 5th, 8th, & 14th, TO PETITION THE GOVERNMENT FOR A REDRESS OF GRIEVANCE, DEPRIVED OF LIFE OR LIBERTY, WITHOUT DUE PROCESS OF LAW, CRUEL AND UNUSUAL PUNISHMENTS

INFLICTED, EQUAL PROTECTION OF THE LAW, (UNSAFE WORK CONDITIONS)."[1]

Dkt. [12] at 3, ¶ III.  Plaintiff also filed affidavits in support of the complaint.  Dkt. Nos. [16]; [17] & [49].

The Defendants, all represented by the Attorney General's office, filed a motion to dismiss, Dkt. [52] and a brief in support.  Dkt. [53].  Plaintiff filed a response, Dkt. [56] and a brief in support of his response.  Dkt. [57].

*Applicable Legal Principles*

As the United States Supreme Court recently held in Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), a complaint may properly be dismissed pursuant to Fed. R. Civ. P. 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Id. at 1974 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Under this standard, the court must, as a general rule, accept as true all factual allegations of the Complaint and all reasonable inferences must be viewed in the light most favorable to plaintiff.  Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).  Nevertheless, under the 12(b)(6) standard, a "court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001), amended by, 275 F.3d 1187 (9th Cir. 2001).  Nor must the Court accept inferences drawn by plaintiff if they are unsupported by the

---

1. Plaintiff does not specifically mention the Civil Rights Act, 42 U.S.C. § 1983.  However, because he is seeking to vindicate his constitutional rights and he does not have a cause of action directly under the Constitution, a liberal reading of the complaint requires the court to construe his complaint as one invoking the court's jurisdiction pursuant to 42 U.S.C. § 1983.  See, e.g., Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983.").

facts as set forth in the complaint. See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 127 S. Ct. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). In addition, the Court of Appeals in Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004), held that a "defendant may submit an indisputably authentic [document] to the court to be considered on a motion to dismiss[.]"

The question to be resolved is: whether, taking the factual allegations of the complaint, which are not contradicted by the exhibits and matters of which judicial notice may be had, and taking all reasonable inferences to be drawn from those uncontradicted factual allegations of the complaint, are the "factual allegations . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact[.]" Bell Atlantic Corp., 127 S.Ct. at 1964-1965. Or, put another way, a complaint may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." Id. at 1974.

In addition, because Plaintiff is a prisoner proceeding in forma pauperis, the screening provisions of the Prison Litigation Reform Act ("PLRA") found at 28 U.S.C. § 1915(e)[2] apply. Furthermore, because Plaintiff is a prisoner who has brought an action seeking redress from a governmental entity or employees of a governmental entity, the PLRA screening provisions of 28 U.S.C. § 1915A apply.[3] Pursuant to these screening provisions, a court is obliged to sua sponte dismiss complaints that are frivolous, malicious or that fail to state a claim upon which relief can be granted at any point in the litigation process. The court's obligation to dismiss a complaint

---

2.  28 U.S.C. §1915(e)(2) provides in relevant part that

>   (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case **at any time** if the court determines that--
>   (A) the allegation of poverty is untrue; or
>   (B) the action or appeal--
>   (i) is frivolous or malicious;
>   (ii) fails to state a claim on which relief may be granted; or
>   (iii) seeks monetary relief against a defendant who is immune from such relief.

(emphasis added).

3.  28 U.S.C. § 1915A provides in relevant part that

>   (a) Screening.--The court shall review, before docketing, if feasible or, in any event, **as soon as practicable** after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>   (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
>   (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>   (2) seeks monetary relief from a defendant who is immune from such relief.

(emphasis added). To the extent that the report relies on any grounds not raised by the motion to dismiss, this was as soon as practicable for the court to perform its screening function under Section 1915A.

under the PLRA screening provisions is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, or, if a defendant did not even file such a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez.

*Discussion*

**Eighth Amendment Claim**

The crux of Plaintiff's complaint is that on January 15, 2007,

> Wallace Dittsworth, Food Service Manager, and Mike Dicarlo, Asst. Food Service Manager, ordered the water temperatures to be raised in the kitchen in order to pass the inspection by the State! I received a second degree water burn as a result of this order on my right forearm. . . .
> . . . I went and got three plastic tubs for soap . . . and started to fill [the] tubs up and notice[d] that the temper[a]ture was even hotter than in weeks before ..., the [one] tub filled half way, then I cut off the water[,] moved the other tub over to fill it half way, and turned the water back on, and after a few seconds[,] I heard the soap pill pop and the water slpashed [sic] off the wall and hit my arm, it was hotter than ever before, it started to sting and burn bad so I ran cold water on it. . . .

Dkt. [13] at 3, ¶ IV.C (capitalization changed).

The Defendants point out that the allegations of the complaint amount at most to negligence and such is insufficient as a matter of law to sustain a Section 1983 cause of action. The Court agrees.

In fact, in his response, Plaintiff makes clear that he is suing the Defendants for negligence. Plaintiff states, inter alia, that

> A prisoner may be able to recover damages for prisoner personnel's negligence through tort actions. "Prison officials and personnel have a tort law duty to provide safe living and working conditions for prisoners. . . .

6

>                . . . .
>                . . . . inmates who are injured while working in a prison shop or industry
> may have a cause of action in negligence.

Dkt. [57] at 1 - 3.

The allegations at most amount to negligence against the Defendants, not acts done intentionally or with deliberate indifference and such allegations of negligence fail to state a claim under Section 1983.  Daniels v. Williams, 474 U.S. 327, 333 (1986) ("injuries inflicted by governmental negligence are not addressed by the United States Constitution");  Woodward v. City of Worland, 977 F.2d 1392, 1399 (10th Cir. 1992)("[L]iability under § 1983 must be predicated upon a 'deliberate' deprivation of constitutional rights by the defendant,' and not on negligence.");  Kwasnik v. LeBlon, 228 Fed. Appx. 238, 244 (3d Cir. 2007) ("Liberally construing the Amended Complaint, as we must, we conclude that the allegations, and reasonable inferences drawn therefrom, at best, merely state a negligence claim. Negligence claims are not cognizable under § 1983.").   Accordingly, the "factual allegations [plead in the complaint are not] . . . enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true" within the contemplation of Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-1965.  The Moving Defendants' motion to dismiss the complaint as to the Eighth Amendment claims should be granted.

In the alternative, the complaint should be dismissed as against Defendants Folino and Beard because the complaint reveals that their only alleged wrongdoing is their participation in the grievance procedure after Plaintiff had already been scalded and this is insufficient as a matter of law.

7

The general rule in Section 1983 cases, such as this one, is that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way." McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir. 1979). Hence, the only way a defendant can be liable under Section 1983 is based upon facts showing that the defendant was personally involved in depriving the civil rights of the plaintiff, i.e., personally engaged in wrongdoing.

As the Defendants point out, Plaintiff seeks to hold Defendants Folino and Beard liable based solely on their participation in the grievance process. In fact, Plaintiff confirms that he is seeking to render Defendants Folino and Beard liable based solely on their participation in the grievance system in his responses to the Defendants' Motion to Dismiss. Plaintiff declares that "[a]nd once a grievance was used, this **now makes** the Superintendent and the Secretary of Corrections liable for knowing of these dangers . . . ." Dkt. [49] at 2 (emphasis added). See also Dkt. [57] at 1 ("And Louis Folino and Jeffrey Beard got knowledge of this [raising of the temperature of the water by the other defendants in order to pass the health inspection] once this grievance system is used and a reply from Louis Folino when used to its fullest as in this my case."). Such a premise for liability fails as a matter of law.

The rule is that "[t]he failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." Rauso v. Vaughn, No. CIV. A. 96-6977, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000). See also Overholt v. Unibase Data Entry, Inc., 221

8

F.3d 1335 (Table), 2000 WL 799760, at *3 (6th Cir. 2000) ("The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation.") (citations omitted); Mitchell v. Keane, 974 F.Supp. 332, 343 (S.D.N.Y. 1997) ("it appears from the submissions before the court that Mitchell filed grievances, had them referred to a prison official, and received a letter reporting that there was no evidence to substantiate his complaints. Mitchell's dissatisfaction with this response does not constitute a cause of action."); Caldwell v. Hall, NO. CIV.A. 97-8069, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000)(The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation."); Orrs v. Corns, No. CIV.A. 92-6442, 1993 WL 418361, at *2 (E.D.Pa. Oct. 13, 1993)("But an allegation that a defendant failed to act on a grievance or complaint does not state a Section 1983 claim."); Croom v. Wagner, Civ. A. No. 06-1431, 2006 WL 2619794, at *4 (E.D.Pa. Sept. 11, 2006)("Furthermore, neither the filing of a grievance nor an appeal of a grievance to Warden Wagner is sufficient to impose knowledge of any wrongdoing."); Jefferson v. Wolfe, NO. CIV A. 04-44, 2006 WL 1947721, at *17 (W.D.Pa. July 11, 2006)("These allegations [of denying grievances or grievance appeals] are insufficient to establish such Defendants' personal involvement in the challenged conduct under Section 1983. See Watkins v. Horn, 1997 WL 566080, at *4 (E.D.Pa..1997)(concurrence in an administrative appeal process is not sufficient to establish personal involvement)").

Even if it were otherwise and mere participation in the grievance procedure could render a prison official liable, Defendants Beard and Folino would still be entitled to have the complaint

dismissed against them for failure to state a claim because the complaint cannot allege the required causation as to them for causing him to be deprived of his constitutional rights.

Regarding Section 1983 actions, in order to

> make out a claim under Section 1983, a plaintiff must demonstrate that the conduct of which he is complaining has been committed under color of state or territorial law and that it operated to deny him a right or rights secured by the Constitution and laws of the United States. The plaintiff must also establish that it was the acts of the defendant which caused the constitutional deprivation.

Mosley v. Yaletsko, 275 F.Supp.2d 608, 613 (E.D.Pa. 2003)(citations omitted).

Such actions or inactions on the part of Defendants Folino and Beard, with respect to denying Plaintiff's grievance concerning his scalding, which, concededly occurred only after the scalding, cannot be said to have been the "cause" of Plaintiff's injuries. Without such causation there can be no liability. See, e.g., Troublefield v. City of Harrisburg, Bureau of Police, 789 F.Supp. 160, 166 (M.D. Pa. 1992)("Brower v. Inyo County, 489 U.S. 593 (1989) . . . requires that some nature of volitional act on the part of the state actor must cause the harm to plaintiff for a fourth amendment excessive force claim to sound."), aff'd, 980 F.2d 724 (3d Cir. 1992) (TABLE); Ricker v. Weston, 27 Fed.Appx. 113, 119 (3d Cir. 2002)("This decision not to discipline the officers does not amount to active involvement in appellees' injuries given that all of the injuries occurred before the decision."); Moor v. Madison County Sheriff's Dept., 30 Fed.Appx. 417, 420 (6th Cir. 2002)("Timing is everything. Cochran did not learn any of these facts until Moor filed her complaint. Specifically, Cochran first learned of the incident on May 27, 1999, when he received a letter from Moor's attorney along with a courtesy copy of the Complaint. After receiving the complaint, Cochran investigated the incident by questioning

Arthur, who denied any wrongdoing, and he reviewed the 911 calls for assistance from the Shell station. . . .In fact, Moor's facts reveal that Cochran did not know of the incident [at the time of its occurrence] and therefore could not have implicitly acquiesced in it."); Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 478 (7th Cir. 1997) ("Chief Robertson could not have undertaken any action to 'un-do' any alleged constitutional violation by Sergeant Krane."). Accordingly, the complaint should be dismissed against Defendants Folino and Beard for either of the foregoing reasons (i.e., no causation or mere participation in the grievance process cannot make one liable).

### Fourteenth Amendment Disclosure of Medical Information Claim

Plaintiff's next claim is that Defendant Varner's sharing of Plaintiff's medical records with a non-medical prison staff member, namely, Wallace Dittsworth, one of the Defendants named herein and the one who was charged with the responsibility of responding to Plaintiff's grievance over his being scalded, violated Plaintiff's Constitutional rights to privacy and the doctor-patient privilege. The source of this right to confidentiality in one's medical records arises from the Fourteenth Amendment's substantive due process provision. See, e.g., Doe v. Delie, 257 F.3d 309, 316 n.5 (3d Cir. 2001).

As the Defendants point out, when a prisoner raises a claim about his being injured in a grievance, it is entirely appropriate and the prisoner should expect that the grievance officer will conduct an investigation into the nature of the injury, which may involve access to the medical records. Hence, such a consultation of the medical records is reasonable as a matter of law.

The court agrees. The court relies upon the reasoning of the case cited by the Defendants, namely, Gowins v. Greiner, NO. 01 CIV. 6933, 2002 WL 1770772 (S.D.N.Y. July 31, 2002).

In Gowins v. Greiner, the inmate-plaintiff presented a similar claim that a prison doctor submitted a portion of the inmate's medical records with the response to the inmate's grievance. The Gowins court "[c]onstru[ed] the complaint liberally to assert that [such] conduct violated [the inmate's] right to privacy or confidentiality under the Fourteenth Amendment." See Gowins v. Greiner, 2002 WL 1770772, at *9. Nevertheless, it was determined that these allegations failed to state a claim upon which relief may be granted:

> Without question, the Due Process Clause of the Fourteenth Amendment protects inmates such as Gowins from the unwanted disclosure of "information relating to the status of one's health." Doe v. City of New York, 15 F.3d 264, 267 (2d Cir. 1994). Prison officials may "impinge on that right only to the extent that their actions are 'reasonably related to legitimate penological interests.' " Powell v. Schriver, 175 F.3d 107, 112 (2d Cir. 1999). In this case, Gowins alleges that Silver "submitted a portion of [Gowins's] medical record in response" to a grievance asserting that Silver's treatment had been "inadequate" and that Silver did "not want[ ] to treat [Gowins] and his injuries," and that as a result, inmates who worked in the prison's Grievance Office may have had access to his medical information. (Amend.Compl.¶¶ 25, 27.) However, having placed his medical condition at issue by filing a grievance alleging inadequate medical care, Gowins cannot be heard now to complain that in response to that grievance, the treating physician included not only an explanation of how he treated Gowins, but also relevant documentation from Gowins's medical record to support his version of events. Such disclosure is reasonably related to the legitimate penological interest of adjudicating Gowins's grievance and establishing whether or not the medical care he received was adequate. Accordingly, the defendants' motion will be granted as to Gowins's right to privacy claim.

Gowins v. Greiner, 2002 WL 1770772, at *9.

Similarly here, Plaintiff put at issue his injury received from the scalding water and, in addition, complained of the fact in his grievance that "the doctor [whom he saw in the infirmary to treat his scalded arm] tells me he couldn't find my medical chart[,] everything had to be documented." Dkt. [13] at 10. Plaintiff also complained about the extensiveness of his alleged

12

injury, claiming that his arm started to blister and he had to go to medical again several days later after the day of the incident. Id. Under such a scenario, it is reasonable for the grievance officer assigned to investigate and respond to the grievance to acquire the necessary information about the injury. When a prisoner files a grievance concerning an injury, he should reasonably expect that the prison authorities would access his medical records and speak to the medical treating personnel in the course of the grievance being investigated. In this way, it is much like any civil plaintiff suing about medical treatment or bringing a tort action for personal injury, where, as a condition of the suit, such plaintiffs impliedly waive their right to confidentiality in the medical records to the extent necessary for the parties and the court to litigate the claims. See, e.g., 1 McCormick On Evidence, § 103 n.7 (6th ed.)("The patient-litigant exception [to the doctor-patient privilege] precludes one who has placed in issue his physical condition from invoking the privilege on the ground that disclosure of his condition would cause him humiliation. He cannot have his cake and eat it too.")(quoting City and County of San Francisco v. Superior Court, 231 P.2d 26, 28 (Cal. 1951)). Cf. United States v. Premises Known as 281 Syosset Woodbury Road, Woodbury, N.Y., 71 F.3d 1067, 1069 (2d Cir. 1995)("the District Court considered the application of the privilege protecting confidential marital communications, which operates much like other confidentiality rules- e.g., the attorney/client privilege. As such, it allows either spouse to compel the non-disclosure of the substance of confidential communications between the two. In reversing the Magistrate Judge, the District Court held that the confidential communications privilege is unavailable to any spouse who asserts an innocent owner defense in a forfeiture proceeding arising out of the other spouse's activities. Id. at 854. The court analogized the assertion of the innocent owner defense to a medical malpractice suit in which the

13

doctor-patient privilege is deemed inapplicable because the patient, by making the confidential relationship the subject of a lawsuit, has, in effect, waived the privilege."); Haney v. Mizell Memorial Hosp., 744 F.2d 1467, 1476 (11th Cir. 1984)("("Surely when one brings a malpractice suit ... one's medical history becomes the subject matter of the suit and he would waive any claim to privilege he might have under the law, if any")(quoting Argonaut Insurance Co. v. Peralta, 358 So.2d 232, 233 (Fla.Ct.App. 1978)). If non-prisoners are deemed to waive their right to privacy in medical records and/or in the doctor-patient relationship upon the filing of civil suits due to the necessities attendant upon such suits, certainly prisoners can be deemed to similarly waive their necessarily more limited right to privacy upon the filing of grievances due to the necessities attendant upon such grievances. See, e.g., Brown v. Baker, NO. 2:03-CV-0169, 2005 WL 1399315, at *2 (S.D.Ind. June 10, 2005)("Prisoners cannot enjoy greater privacy protection than individuals in free society, Carroll v. DeTella, 255 F.3d 470, 472 (7th Cir. 2001), and some amount of sharing of medical information . . . is commonplace.")

Accordingly, we find that although Plaintiff may have a Fourteenth Amendment substantive due process right to confidentiality in his medical records and in the doctor-patient relationship, when he files a grievance that reasonably puts at issue his medical condition/ treatment and/or the extent of injury, then he must reasonably expect that in the course of the grievance process, his medical records will be accessed in order to respond to the grievance and so, his constitutional right to privacy has not been violated. This is so because he has impliedly waived any constitutional right to privacy in those records by the filing of the grievance and putting such at issue.

Accordingly, Plaintiff's Fourteenth Amendment substantive due process right to privacy claim must be dismissed for failure to state a claim upon which relief can be granted.

### Other Remaining Claims

As noted by the Defendants,

> Caldwell also references in his Complaint the First, Fifth and Fourteenth Amendments, as well as rights "TO PETITION THE GOVERNMENT FOR A REDRESS OF GRIEVANCE," "WITHOUT DUE PROCESS OF LAW" and "EQUAL PROTECTION OF THE LAW." See Complaint, at § III. However, even giving this pro se complaint a broad reading, it does not appear that these conclusory assertions raise any additional justiciable claims other than the Eighth Amendment claims addressed herein and the Fourteenth Amendment claim addressed below. Accordingly, these are the only claims to which a response will be provided.

Dkt. [53] at 6 n.1. The court agrees and finds any such remaining claims fail to state a claim upon which relief can be granted. Nevertheless, the court will address Plaintiff's potential other claims.

As for the First Amendment claim, the court understands Plaintiff to be invoking his First Amendment right to petition the government. The court understands Plaintiff to be implying that the denial of his grievances by the Defendants violated his right to petition the government. Plaintiff is simply mistaken. Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)(per curiam)("the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."); Wilson v. Horn, 971 F.Supp. 943, 947 (E.D. Pa. 1997) (where prisoner sued DOC officials for failing to respond to his grievances, the court held that "[p]risoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional

15

rights. Prisoners do have a constitutional right to seek redress of their grievances from the government, but that right is the right of access to the courts, and this right is not compromised by the failure of the prison to address his grievances."), aff'd, 142 F.3d 430 (3d Cir. 1998) (Table).

As to Plaintiff's Fifth Amendment claim, it should be dismissed. The Fifth Amendment provides in full that

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

None of the provisions of the Fifth Amendment appears to be implicated by Plaintiff's complaint, except for the due process provision. However, the Fifth Amendment's due process clause only protects against federal governmental action. See Riley v. Camp, 130 F.3d 958, 972 n.19 (11th Cir. 1997)("The Fifth Amendment obviously does not apply here--the acts complained of were committed by state rather than federal officials."); Wrinkles v. Davis, 311 F.Supp.2d 735, 738 (N.D.Ind. 2004) ("The Fifth Amendment's due process clause applies only to acts of the federal government and does not limit actions of state officials."). All the Defendants named herein, are state, not federal actors and, hence, the Fifth Amendment is inapplicable. Accordingly, Plaintiff's Fifth Amendment claims should be dismissed for failure to state a claim.

We turn next to Plaintiff's Equal Protection claim. The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the

equal protection of the laws." U.S. Const. Amend. XIV, § 1. In order to state an equal protection claim, plaintiff must show that: (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person. See Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995). Instantly, Plaintiff has made no allegations that he was treated any differently from those who were similarly situated to himself. See Hedrich v. Board of Regents of University of Wisconsin System, 274 F.3d 1174, 1183 (7th Cir. 2001) ("In order to make out an equal protection claim, however, Hedrich had to present evidence that the defendants treated her differently from others who were similarly situated."). Because Plaintiff has failed to allege disparate treatment against him in comparison with those similarly situated, any equal protection claim must be dismissed.

For the foregoing reasons, Plaintiff's complaint should be dismissed with prejudice for failure to state a claim upon which relief can be granted. The court also concludes that amendment of the complaint would be futile. See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("We have held that even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.")

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are permitted to file written objections by August 1, 2008 and responses are to be filed seven (7) days thereafter in accordance with the schedule established in the docket

entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

    Respectfully submitted,

    /s/ *Amy Reynolds Hay*
    United States Magistrate Judge

Dated: 14 July, 2008

cc: The Honorable Terrence F. McVerry
    U.S. District Court Judge

    Clay Caldwell
    EM-2163
    SCI Greene
    175 Progress Drive
    Waynesburg, PA 15370

    All Counsel of Record via CM-ECF